UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| | ) | |
| MARATHON ASSET MANAGEMENT, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| WILMINGTON TRUST, N.A., as | ) | |
| Administrative and Collateral Agent, | ) | Case No. 15-cv-04727 (AT)(AJP) |
| | ) | |
| Defendant, | ) | |
| | ) | |
| ANGELO GORDON & CO., LP, APOLLO | ) | |
| ADVISORS VII, L.P., BROOKFIELD ASSET | ) | |
| MANAGEMENT PRIVATE | ) | |
| INSTITUTIONAL CAPITAL ADVISER | ) | |
| (CANADA), L.P., | ) | |
| | ) | |
| Intervenor Defendants | ) | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO REMAND AND FOR ABSTENTION

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................1

BACKGROUND ...........................................................2

ARGUMENT ...............................................................4

I.    THE COURT LACKS JURISDICTION OVER THIS ACTION. ...................4

      A.    Marathon's Claims Do Not "Arise Under" The Bankruptcy Code. ........5

      B.    Marathon's Claims Do Not "Arise In" TCEH's Bankruptcy Case........5

      C.    Marathon's Claims Are Not "Related To" TCEH's Bankruptcy Case..................8

II.   EVEN IF "RELATED TO" JURISDICTION EXISTED, THE COURT SHOULD
      ABSTAIN FROM HEARING, OR EQUITABLY REMAND, THE ACTION TO
      THE STATE COURT ...............................................9

CONCLUSION...............................................................11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Baker v. Simpson*,
    613 F.3d 346 (2d Cir. 2010)...............................................................................5

*Bank of Am., N.A. v. Lightstone Holdings, LLC (In re Extended Stay Inc.)*,
    418 B.R. 49 (Bankr. S.D.N.Y. 2009), *aff'd in part, rev'd in part on other*
    *grounds sub nom. Five Mile Capital II SPE ESH LLC v. Cerberus Capital*
    *Mgmt. (In re Extended Stay Inc.)*, 435 B.R. 139 (S.D.N.Y. 2010) ..................................6, 8

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995)...........................................................................................8

*Gen. Elec. Capital Corp. v. Pro-Fac Coop., Inc.*,
    No. 01 CIV 10215 (LTS), 2002 WL 1300054 (S.D.N.Y. June 11, 2002)...........................8

*Gordon v. Shirley Duke Assocs. (In re Shirley Duke Assocs.)*,
    611 F.2d 15 (2d Cir. 1979).............................................................................6, 8

*In re Fairfield Sentry Ltd.*,
    458 B.R. 665 (S.D.N.Y. 2011).............................................................................5

*Kraken Invs. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*,
    475 B.R. 9 (S.D.N.Y. 2012)..............................................................................5

*Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co.*
    *LLC)*,
    Nos. 98 B 46167 JLG, 98 B 46168 JLG, 98/9155A, 1999 WL 58581
    (Bankr. S.D.N.Y. Jan. 25, 1999) ........................................................................6

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011)...............................................................................9

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
    980 F.2d 110 (2d Cir. 1992)..............................................................................8

*Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home)*,
    144 B.R. 951 (S.D.N.Y. 1992)..........................................................................10

*Resolution Trust Corp. v. Best Prods. Co., Inc. (In re Best Prods. Co., Inc.)*,
    68 F.3d 26 (2d Cir. 1995)..............................................................................6-7

*Rockefeller Ctr. Props. v. Lindy's Operating, Inc.*,
    No. 95 Civ. 5142 (PKL), 1995 U.S. Dist. LEXIS 15297 (S.D.N.Y. Oct. 17,
    1995) .......................................................................................................8

*Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*,
    No. 12 Civ. 1397(LTS)(HBP), 2012 WL 4794450 (S.D.N.Y Oct. 9, 2012) ....................10

*United States v. Town of N. Hempstead*,
    610 F.2d 1025 (2d Cir. 1979)................................................................................................9

## STATUTES

28 U.S.C. § 1334(b) ...............................................................................................................2, 4, 9

28 U.S.C. § 1334(c)(1)..........................................................................................................2, 10

28 U.S.C. § 1334(c)(2)............................................................................................................2, 9

28 U.S.C. § 1447(c) ...................................................................................................................9

28 U.S.C. § 1452(b) .............................................................................................................2, 10

Marathon Asset Management, LP, on behalf of one or more managed funds and/or accounts ("Marathon"), respectfully submits this memorandum of law in support of its motion to remand this action to the Supreme Court of the State of New York, County of New York (the "State Court"), where it was commenced.[1]

## PRELIMINARY STATEMENT

This action is a state law contract dispute among lenders.  Notwithstanding the Intervenor Defendants' attempt to characterize Marathon's claims in this action as related to the bankruptcy case of the lenders' borrower, Texas Competitive Electric Holdings Company's ("TCEH"), the resolution of this action neither depends upon nor affects TCEH or any aspect of its bankruptcy. Marathon's claims in this action do not seek to affect the amount payable by TCEH to its creditors (including the group of First Lien Lenders (defined below) of which Marathon is a part) under TCEH's proposed chapter 11 plan or otherwise.  Rather, this action seeks to determine the relative rights of those individual First Lien Lenders as to whatever amount TCEH pays to them collectively.  Through this action, Marathon seeks only to preserve its contractual priority rights—vis-à-vis the other First Lien Lenders only—to whatever amount ultimately is paid by TCEH on account of the first lien credit facility.

No matter what the outcome of this action, TCEH will not be required to pay more or less to any creditor in its bankruptcy.  Marathon's claims in this action can have no conceivable effect on TCEH's bankruptcy estate or the amount available for distribution to TCEH's creditors, and are not "related to" TCEH's bankruptcy case.  Nor do its claims derive from or rely in any way on the Bankruptcy Code.  Indeed, the Complaint does not make reference to a single

---

[1]     Capitalized terms used but not defined herein shall have the meanings given to them in the Notice of Removal ("Removal Notice") filed by Angelo Gordon & Co., LP, Apollo Advisors, L.P., and Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P. (collectively, the "Intervenor Defendants").  A copy of Marathon's Complaint is attached as Exhibit A to the Removal Notice.

Bankruptcy Code section.  To the contrary, Marathon's claims exist independent of TCEH's bankruptcy.  They are state law claims based on contract rights among creditors, governing how amounts owed by TCEH to the First Lien Lenders collectively will be divided among those lenders after they are paid by TCEH.  Accordingly, the Court lacks jurisdiction over Marathon's claims under 28 U.S.C. § 1334(b), and this action should be remanded to the State Court.

Even if a tenuous basis for "related to" jurisdiction existed under 28 U.S.C. § 1334(b)—and Marathon maintains it does not—28 U.S.C. § 1334(c)(2) mandates abstention because the Intervenor Defendants have not asserted any other basis for original federal jurisdiction over Marathon's claims.  Alternatively, the Court should permissively abstain pursuant to 28 U.S.C. § 1334(c)(1) or remand this action to the State Court on equitable grounds pursuant to 28 U.S.C. § 1452(b).  In all events, this action properly belongs in New York state court, and should not be dragged into federal court simply because a non-party to the action happens to be in bankruptcy.

## BACKGROUND

In this action, Marathon seeks a declaration affirming its contractual rights to payment under a $1.25 billion letter of credit subfacility (the "Deposit L/C Loan Facility") within a $24.5 billion credit facility under which TCEH is the borrower.  *See* Compl. ¶ 1.  The defendant, Wilmington Trust, N.A., as Administrative Agent and Collateral Agent ("Wilmington"), serves as the agent for Marathon and the other lenders under the Deposit L/C Loan Facility (the "Deposit L/C Loan Facility Lenders") and the other lenders under the larger credit facility (the "First Lien Lenders"), some of whom have intervened.  *See id.* ¶ 2.  The credit facility is governed by a Credit Agreement by and among TCEH and its affiliates, the First Lien Lenders, the Defendant as Administrative and Collateral Agent, and certain other parties thereto (the "Credit Agreement").  *See id.* ¶ 6.  The Credit Agreement and all other applicable agreements are

expressly governed by New York law and contain provisions under which all parties consent to the jurisdiction of the New York state courts.

Marathon and the other Deposit L/C Loan Facility Lenders under the separate $1.25 billion Deposit L/C Loan Facility have a priority secured interest in, and rights to, cash attributable to letters of credit issued under that facility. *See* Compl. ¶ 5. The proceeds of the Deposit L/C Loan Facility that were advanced by the Deposit L/C Loan Facility Lenders were deposited into a segregated account established by TCEH as security for the Deposit L/C Loan Facility ("Deposit L/C Loan Collateral Account"), such that the account initially contained $1.25 billion in cash. *See id.* ¶ 7. Under the Credit Agreement and a related security agreement (the "Security Agreement"), TCEH granted a security interest in the Deposit L/C Loan Collateral Account and its cash and proceeds to all of the Deposit L/C Loan Facility Lenders and all of the other First Lien Lenders and agent parties to the Credit Agreement to secure TCEH's obligations to those parties. *See id.* However, Marathon and the other Deposit L/C Loan Facility Lenders were granted a priority right in the Deposit L/C Loan Collateral Account, above the rights of the First Lien Lenders who made other types of loans under the Credit Agreement but who did not make loans under the Deposit L/C Loan Facility and whose cash was not used to fund the Deposit L/C Loan Collateral Account. *See id.*

The Intercreditor Agreement among TCEH and its affiliates, the First Lien Lenders, the Defendant as Administrative and Collateral Agent, and certain other parties thereto (the "Intercreditor Agreement") gives effect to that priority right by providing that any funds in the Deposit L/C Loan Collateral Account shall be distributed to the Deposit L/C Loan Facility Lenders before being distributed ratably to other First Lien Lenders. *See* Compl. ¶¶ 6, 8. This priority "waterfall" guarantees the Deposit L/C Loan Facility Lenders not just a lien on the

Deposit L/C Loan Collateral Account and its cash and proceeds, but a priority right to specific cash in and proceeds of that account. *See id.* ¶ 8. The First Lien Lenders that are not Deposit L/C Loan Facility Lenders do not share in that priority right. *See id.* Nevertheless, the non-Deposit L/C Loan Facility Lenders have refused to recognize Marathon's rights. *See id.* ¶ 9.

Accordingly, Marathon has brought this action to determine and preserve its priority rights in the Deposit L/C Loan Collateral Account—as between the Deposit L/C Loan Facility Lenders and the other First Lien Lenders—upon any distribution by TCEH to the First Lien Lenders collectively. Such a determination respecting the priority rights of Marathon and the other Deposit L/C Loan Facility Lenders will not affect the amount payable by the TCEH to the First Lien Lenders collectively (or to any other creditors) or otherwise burden the administration of the TCEH estate.

## ARGUMENT

### I.   THE COURT LACKS JURISDICTION OVER THIS ACTION.

The Intervenor Defendants' Removal Notice is premised on the faulty notion that this Court has jurisdiction over Marathon's claims pursuant to 28 U.S.C. § 1334. Section 1334(b) provides that this Court has original jurisdiction over "all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(b). But Marathon's claims in this action do not "arise under" the Bankruptcy Code or "arise in" or "relate to" TCEH's bankruptcy case. The only connection of this action to bankruptcy is the fact that TCEH is in bankruptcy. If that fact alone were sufficient to support federal court jurisdiction, then every contract dispute between non-debtor parties to a contract would be subject to federal court jurisdiction, notwithstanding a lack of federal subject matter and a lack of diversity, if the debtor happened to also be a party to the contract—even where the contract dispute could not affect the debtor. That extremely broad view is inconsistent with

4

federal law and would upend basic principles of federal jurisdiction.  Therefore, this action must be remanded to the State Court.

### A.   Marathon's Claims Do Not "Arise Under" The Bankruptcy Code.

"Arising under" jurisdiction exists when a plaintiff's causes of action are "created by [the Bankruptcy Code]," meaning "any matter under which a claim is made under a provision of [T]itle 11."  *Kraken Invs. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*, 475 B.R. 9, 27 (S.D.N.Y. 2012).  None of the claims Marathon asserts in this action is created by, requires consideration or resolution of, or relies in any way on, the Bankruptcy Code.  And the Intervenor Defendants do not attempt to explain their basis for arguing that they do.  Indeed, there is not a single reference to the Bankruptcy Code in Marathon's Complaint.  Instead, Marathon's claims are purely contractual.  The fact that TCEH, which is not a defendant in this action, is in bankruptcy does not somehow transform Marathon's state law contract claims against non-debtor parties into claims that "arise under" the Bankruptcy Code.  Therefore, the Court lacks jurisdiction on the basis that Marathon's claims "arise under" the Bankruptcy Code.  *See In re Fairfield Sentry Ltd.*, 458 B.R. 665, 675 (S.D.N.Y. 2011) (no "arising under" jurisdiction existed when "[n]either the causes of action nor substantive rights claimed in these cases are created by the Bankruptcy Code.").

### B.   Marathon's Claims Do Not "Arise In" TCEH's Bankruptcy Case.

"Arising in" jurisdiction "covers claims that 'are not based on any right expressly created by [the Bankruptcy Code], but nevertheless, would have no existence outside of the bankruptcy.'"  *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).  Neither the defendant, Wilmington, nor the Intervenor Defendants are debtors in any bankruptcy case.  Marathon's claims are separate and independent from, and do not owe their existence to, TCEH's bankruptcy case.  Marathon's claims do not seek to alter the amount of the distribution from TCEH to the

First Lien Lenders on account of the debt owed under the first lien credit facility (or any amounts owed to other creditors).  They merely seek to determine how that amount will be divided up among the First Lien Lenders after it leaves TCEH's estate.  Thus, this action is purely an intercreditor dispute that depends on the interpretation of contracts (the Credit Agreement, Security Agreement, and Intercreditor Agreement) governed by New York state law and is not the type of action that could arise only in a bankruptcy case.  *See Bank of Am., N.A. v. Lightstone Holdings, LLC (In re Extended Stay Inc.)*, 418 B.R. 49, 58 (Bankr. S.D.N.Y. 2009) (holding that claims "brought by a non-debtor against a non-debtor involving guarantees are not claims that by their nature could arise only in the context of a bankruptcy case. To the contrary, claims against non-debtor guarantors routinely are brought and adjudicated in state court."), *aff'd in part, rev'd in part on other grounds sub nom. Five Mile Capital II SPE ESH LLC v. Cerberus Capital Mgmt. (In re Extended Stay Inc.)*, 435 B.R. 139 (S.D.N.Y. 2010); *Gordon v. Shirley Duke Assocs. (In re Shirley Duke Assocs.)*, 611 F.2d 15, 18 (2d Cir. 1979) ("As a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property . . ."); *Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co. LLC)*, Nos. 98 B 46167 JLG, 98 B 46168 JLG, 98/9155A, 1999 WL 58581, at *4 (Bankr. S.D.N.Y. Jan. 25, 1999) (recognizing the general proposition that "disputes between third parties whose resolution can have no conceivable effect upon the debtor, its estate or creditors are not 'core' proceedings.").

This action is readily distinguishable from the *Best Products* case cited by the Intervenor Defendants.  *See* Removal Notice ¶¶ 13-14.  As an initial matter, the claims at issue in *Best Products* required the court to interpret section 510 of the Bankruptcy Code (governing the enforceability of subordination agreements) and thus implicated "arising under" jurisdiction.  *See*

*Resolution Trust Corp. v. Best Prods. Co., Inc. (In re Best Prods. Co., Inc.)*, 68 F.3d 26, 31 (2d

Cir. 1995).  In concluding that it had jurisdiction, the Second Circuit observed that

"[d]etermination of the priority rights of various creditors to assets of the Debtor was necessary

to administer the estate and was not merely a dispute between two creditors."  *Id.* at 32.  But the

dispute in *Best Products* was between two classes of creditors with different lien statuses, and the

outcome would eliminate the recovery of one class.  *See id.* at 28-29.  In addition, the debtor was

involved in the dispute.  *See id.* at 32.  Here, Marathon is not seeking to alter the distribution

scheme as between different classes of creditors as in *Best Products*.  Therefore, Marathon's

claims will not affect the administration of the estate.  Whatever amount is to be distributed by

TCEH to the First Lien Lenders can be paid to the First Lien Lenders.  Marathon's claims seek

only to determine how those funds are divided among the First Lien Lenders after such

distribution.  That determination would need to be made in connection with any distribution from

the segregated Deposit L/C Loan Collateral Account which is at the center of this action, whether

or not any bankruptcy of TCEH were pending.

Notwithstanding the Intervenor Defendants' efforts to establish jurisdiction where none

exists by parroting back Marathon's statement that the dispute "has come to a head since TCEH

and certain of its affiliates filed chapter 11 bankruptcy proceedings last year," Removal Notice ¶

14, Marathon's claims existed before the TCEH bankruptcy, when Marathon first brought these

issues to the attention of other parties to this action.  The fact that Marathon wants to resolve

these issues now is a function of the other First Lien Lenders' unwillingness to pursue a

consensual resolution, not a result of the bankruptcy filing (which was pending for a year before

Marathon filed its complaint).  And, even if the TCEH bankruptcy were an incentive for

Marathon to litigate these issues with its non-debtor counterparties, that alone cannot cause

Marathon's claims to "arise in" the TCEH bankruptcy. *See Extended Stay*, 418 B.R. at 58 (concluding that lender's guaranty claims did not "arise in" the debtor-borrower's bankruptcy case even though the debtors' bankruptcy triggered the liability under the guaranty). Marathon's claims do not depend on TCEH's bankruptcy for their existence.

> **C.      Marathon's Claims Are Not "Related To" TCEH's Bankruptcy Case.**

It is well-settled that a court has "related to" bankruptcy jurisdiction over cases where the outcome "might have any 'conceivable effect' on [a bankruptcy] estate." *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) (internal citations omitted). "A proceeding between non-debtors has a 'conceivable effect' on the bankruptcy estate where the dispute would 'affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights and liabilities.'" *Gen. Elec. Capital Corp. v. Pro-Fac Coop., Inc.*, No. 01 CIV 10215 (LTS), 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002). This is a broad test, but not one without limits. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) ("'related to' jurisdiction cannot be limitless."). It is clear that no federal jurisdiction over a state court action exists on the basis of a bankruptcy where there is no effect of the state court action on the debtor or its relationships with its other creditors. *See Gordon* 611 F.2d at 18. As described above, Marathon's claims would not affect how much property is available for distribution to creditors, alter the distribution among classes of creditors, or alter the debtor's rights or liabilities in any way.

The *Rockefeller Center* case cited by the Intervenor Defendants is inapposite. That case involved an action *by the Debtor* to recover property that would augment the estate. *See Rockefeller Ctr. Props. v. Lindy's Operating, Inc.*, No. 95 Civ. 5142 (PKL), 1995 U.S. Dist. LEXIS 15297, at *3 (S.D.N.Y. Oct. 17, 1995). Conversely, this action is a dispute between third

parties that has no effect on property of TCEH's estate or on creditor recoveries; it deals only

with internecine rights among the First Lien Lenders.  No result of this action would place more

money in TCEH's coffers, nor would it require TCEH to pay even a dollar more than it would

otherwise pay as a result of its bankruptcy.  While the Intervenor Defendants may prefer that this

case be adjudicated in a different forum, subject matter jurisdiction cannot "arise from the

circumstance that the exercise of such judicial power is desirable or expedient."  *United States v.*

*Town of N. Hempstead*, 610 F.2d 1025, 1029 (2d Cir. 1979).

## II.   EVEN IF "RELATED TO" JURISDICTION EXISTED, THE COURT SHOULD ABSTAIN FROM HEARING, OR EQUITABLY REMAND, THE ACTION TO THE STATE COURT

Even if the Court were to determine that it had "related to" jurisdiction over Marathon's

claims, it must abstain from exercising such jurisdiction under 28 U.S.C. § 1334(c)(2), which

provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Marathon's motion, made within the 30 days provided under 28 U.S.C. § 1447(c), is

timely.  In addition, the only asserted basis for federal subject matter jurisdiction is 28 U.S.C. §

1334(b).  *See* Removal Notice ¶ 4.

Marathon commenced this action in the State Court, where it can be "timely

adjudicated."  In *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir.

2011), the Second Circuit identified four factors to be evaluated in connection with the

timeliness inquiry under 28 U.S.C. § 1334(c)(2): "(1) the backlog of the state court's calendar

relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." Here, there is no suggestion that the State Court could not adjudicate this action in a timely manner. And the State Court is the more appropriate forum for resolving a contract dispute under New York State law. Finally, the resolution of Marathon's claims will not prolong the administration of the TCEH estate or affect TCEH's bankruptcy case in any way because, as described above, the claims will not affect the amount payable by TCEH to the First Lien Lenders. Indeed, the TCEH bankruptcy could be completely resolved, and all value to be distributed to the First Lien Lenders could be distributed, and this action could continue thereafter to determine the proper allocation of that value among the First Lien Lenders. Therefore the mandatory abstention criteria are easily satisfied.

Alternatively, the Court should permissively abstain under 28 U.S.C. § 1334(c)(1) or remand this action on equitable grounds under 28 U.S.C. § 1452(b). The factors to be considered in determining whether to permissively abstain or equitably remand are: "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court." *See Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home)*, 144 B.R. 951, 956 (S.D.N.Y. 1992); *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397(LTS)(HBP), 2012 WL 4794450, at *4 (S.D.N.Y Oct. 9, 2012). On balance, for the same reasons described above, these factors support permissive abstention or equitable remand.

## CONCLUSION

For the foregoing reasons, this action should be remanded to the State Court.

Dated:  June 29, 2015

WILMER CUTLER PICKERING
 HALE AND DORR LLP


By:  /s/ George W. Shuster, Jr.
George W. Shuster, Jr.
Christopher J. Bouchoux
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

*Counsel for Marathon Asset Management, LP*