

# O'MELVENY & MYERS LLP

| | Times Square Tower | |
|---|---|---|
| BEIJING | 7 Times Square | SAN FRANCISCO |
| BRUSSELS | New York, New York 10036-6524 | SEOUL |
| CENTURY CITY | | SHANGHAI |
| HONG KONG | TELEPHONE (212) 326-2000 | SILICON VALLEY |
| LONDON | FACSIMILE (212) 326-2061 | SINGAPORE |
| LOS ANGELES | www.omm.com | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |

June 30, 2015

WRITER'S DIRECT DIAL
(212) 408-2409

**BY ECF**

WRITER'S E-MAIL ADDRESS
jrosenberg@omm.com

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:   *Marathon Asset Management, LP v. Wilmington Trust, N.A.*, Case No. 1:15-cv-04727 (AT)(AJP)

Dear Judge Torres:

      We represent Angelo Gordon & Co., LP, Apollo Advisors VII, L.P., and Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P. (collectively the "Intervenor Defendants"). On their behalf, we respectfully request a pre-motion conference at the Court's earliest convenience on the Intervenor Defendants' anticipated motion to transfer this action to the United States District Court for the District of Delaware (the "Delaware District Court") under 28 U.S.C. § 1404(a) or § 1412, for ultimate referral to the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), where the TCEH Bankruptcy Proceedings (defined below)—of which this action is an integral part—are pending.

      In this action, Marathon Asset Management, LP ("Marathon") seeks to dictate how holders of approximately $24.5 billion in principal amount of first lien debt (the "First Lien Creditors") issued by Texas Competitive Electric Holdings Co. LLC ("TCEH") will be treated under TCEH's proposed chapter 11 plan in the bankruptcy cases of TCEH, its parent corporation, and certain of its subsidiaries pending in the Delaware Bankruptcy Court (the "Bankruptcy Proceedings"). Marathon claims that "Deposit L/C Lenders" like itself who collectively hold approximately $1.25 billion in principal loans committed to collateralize TCEH's obligation to letter of credit issuers (the "Deposit L/C Collateral Account") should have a priority over all other First Lien Creditors, including the Intervenor Defendants, as to distributions from the Deposit L/C Collateral Account in the Bankruptcy Proceedings.[1] Marathon concedes that this

---

[1] The funds in the Deposit L/C Collateral Account were deposited according to a credit agreement entered into on October 10, 2007 (the "Credit Agreement") and are part of the collateral securing all of TCEH's first lien debt for the First Lien Creditors. The relative rights and priorities of the First Lien Creditors are governed by an

O'MELVENY & MYERS LLP

Hon. Analisa Torres, June 30, 2015 - Page 2

action will only ripen in the context of confirmation of a plan of reorganization that addresses the rights of the First Lien Creditors.  Compl. ¶ 47.

Transferring this action to the Delaware District Court for ultimate referral to the Delaware Bankruptcy Court is appropriate under either 28 U.S.C. § 1404(a) or § 1412.[2]  Section 1404(a) allows a district court to transfer "any civil action to any other district . . . where it might have been brought," when such transfer is "in the interest of justice."  Similarly, section 1412 allows a district court to transfer a "case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  Under these statutes, the Court should transfer this case to the Delaware District Court because (i) this action is a proceeding under title 11, (ii) this case could have been brought in Delaware, (iii) transferring this case to the Delaware District Court for referral to the Delaware Bankruptcy Court is in the interest of justice because it promotes judicial economy, and (iv) transferring this case to Delaware would serve the parties' convenience:

> (i)   This case meets the first predicate of section 1412 because it is a core proceeding: the relevant claims "arise in" a case under title 11 and "arise under" the Bankruptcy Code.  *See Stern v. Marshall*, 131 S. Ct. 2594, 2604 (2011) (holding that there is no "category of core proceedings that neither arise under Title 11 nor arise in a Title 11 case").  A dispute is core when it "[f]ix[es] the order of priority of creditor claims against a debtor." *In re Best Prods. Co., Inc.* 68 F.3d 26, 31 (2d Cir. 1995).  Claims also arise in chapter 11 proceedings when they "would have no practical existence *but for*" underlying bankruptcy proceedings.  *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).  Here, this dispute concerns the relative priority rights of Marathon, the Intervenor Defendants, and other First Lien Creditors to distributions under a potential TCEH plan of reorganization.  Compl. ¶ 11 (alleging that Marathon's rights to priority distribution from the Deposit L/C Collateral Account are "at risk following any distributions from TCEH's chapter 11 case and more generally").  Moreover, Marathon has conceded that this dispute will only ripen for adjudication when "the bankruptcy proceedings of TCEH run their course, [and] the time will soon come for Wilmington [Trust] to allocate and distribute value" to First Lien Creditors.  *Id.* ¶ 47.
>
> Additionally, this is a proceeding under title 11 because this case is "related to" the Bankruptcy Proceedings.  "Related to" jurisdiction exists where an action could have any "conceivable effect" upon the bankruptcy estate, *In re Quigley Co., Inc.*, 676 F.3d 45, 53–54 (2d Cir. 2012), such as actions affecting the parties' recovery rights in a bankruptcy estate.  *See In re Rockefeller Ctr. Props.*, 1995 U.S. Dist. LEXIS 15297, at *4–5 (S.D.N.Y. Oct. 17, 1995).  Here, Marathon concedes that this action would affect

---

intercreditor agreement, dated October 10, 2007 and amended and restated as of August 7, 2009 (the "Intercreditor Agreement").  Defendant Wilmington Trust, N.A. ("Wilmington Trust") is the administrative agent and collateral agent for the First Lien Creditors, including Marathon and the Intervenor Defendants.

[2] Under the Delaware District Court's standing order of reference, this action would be automatically referred to the Delaware Bankruptcy Court, where it would be docketed as a case related to the pending Bankruptcy Proceedings.  Amended Standing Order of Reference (D. Del. Feb. 29, 2012).

O'MELVENY & MYERS LLP

Hon. Analisa Torres, June 30, 2015 - Page 3

distributions from the TCEH bankruptcy estate by altering First Lien Creditors' rights to distributions from the Deposit L/C Collateral Account.  Compl. ¶¶ 8, 12 n.1, 46–47, 49.

(ii)   This case meets the first predicate of section 1404(a) because it could have been brought in Delaware for two reasons.  *First*, the Bankruptcy Proceedings are pending in Delaware and, under 28 U.S.C. § 1409, "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  *Second*, this case could have been brought in Delaware because defendant Wilmington Trust has its main office in Delaware.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (finding corporation to be citizen of state where "the corporation's high level officers direct, control, and coordinate the corporation's activities").

(iii)   This case meets the second predicate for venue transfer under both sections 1404(a) and 1412 because transferring this case to the Delaware District Court for referral to the Delaware Bankruptcy Court would promote judicial economy.  *See JPMorgan Chase Bank, N.A. v. Coleman-Toll Ltd. P'ship*, 2009 WL 1457158, at *8–9 (S.D.N.Y. May 26, 2009) (holding that "the existence of a related action pending in the transferee court weighs heavily towards transfer," particularly when the related action "involv[es] the same facts, transactions, or occurrences"); *see also M.D. SASS Re/Enter. Partners v. Cargill Fin. Servs. Corp.* 1994 WL 97355, at *2 (S.D.N.Y. Mar. 18, 1994) (holding that "[t]he interests of justice overwhelmingly dictate transfer to the [court] where the bankruptcy is pending" when the dispute could "result in a *de facto* recalculation and redistribution or rights among . . . creditors").  As described above, this action is enmeshed with the Bankruptcy Proceedings.  The Honorable Judge Christopher Sontchi has presided over the Bankruptcy Proceedings since they were commenced on April 29, 2014, and would preside over this action post-transfer.  In addition to knowing the factual background and parties to this action, Judge Sontchi is already aware of the issue presented in this dispute, having reserved the rights of the Deposit L/C Lenders at issue at the outset of the Bankruptcy Proceedings.  He is also familiar with the Credit Agreement and Intercreditor Agreement that are central to Marathon's claims.  And Judge Sontchi is responsible for overseeing (i) confirmation of the plan that may determine the parties' substantive rights, which bears on whether this dispute is ripe for adjudication, and (ii) distributions from the bankruptcy estate, which the outcome of this action would affect.  Thus, the most efficient and economical means of resolving this dispute is transferring it to the Delaware District Court for referral to Judge Sontchi.

(iv)   Finally, the second predicate for section 1412 is also met because it would be more convenient for this action to be litigated in the Delaware Bankruptcy Court as part of the Bankruptcy Proceedings.  Marathon concedes that its rights are only at risk in the context of plan confirmation.  The Delaware Bankruptcy Court will already be overseeing litigation surrounding a potential plan of reorganization later this year, and the parties to this lawsuit are all actively involved in the Bankruptcy Proceedings, including

O'MELVENY & MYERS LLP

Hon. Analisa Torres, June 30, 2015 - Page 4

litigation over the plan of reorganization.[3]  It would therefore be far more efficient for the parties to litigate confirmation-related disputes in one forum instead of carving this case out for separate adjudication here.  *See In re Enron Corp.*, 317 B.R. 629, 640 (Bankr. S.D.N.Y. 2004); *Beal v. U.S. Bank Nat'l Ass'n*, 2010 WL 2541165, at *4 (S.D.N.Y. June 8, 2010).

The Intervenor Defendants also request that in light of their anticipated transfer motion and Marathon's June 29, 2015 remand/abstention motion (ECF Nos. 14, 15), the Court should issue a schedule to (i) coordinate briefing on Marathon's remand/abstention motion and the Intervenor Defendants' anticipated venue transfer motion and (ii) defer the Intervenor Defendants' and Wilmington Trust's time to respond to the complaint until after the Court decides those motions.  Marathon's remand/abstention motion and the Intervenor Defendants' anticipated venue transfer motion raise overlapping issues—whether and to what extent this matter is intertwined with and will affect the Bankruptcy Proceedings.  Thus, the Intervenor Defendants propose the following consolidated briefing schedule:

- Friday July 17, 2015:  Intervenor Defendants' motion to transfer and opposition to Marathon's motion to remand are due.
- Wednesday, July 29, 2015:  Plaintiff's reply brief in support of remand and opposition to transfer are due.
- Monday, August 3:  Intervenor Defendants' reply brief in support of venue transfer is due.
- Intervenor Defendants and Wilmington Trust would respond to the complaint two weeks after the Court rules on one or more of the motions.[4]

The Intervenor Defendants have made one prior request to extend the time to respond to the complaint, which this Court granted on June 24, 2015.  (ECF No. 11.)  Under that order, the time to respond to the complaint currently expires on July 20, 2015.  Marathon has consented to the foregoing proposed briefing schedule, and Wilmington Trust has advised us that it does not intend to take a position with respect to remand/abstention or venue transfer.

Thank you for your prompt consideration of this matter.

---

[3] Marathon appeared on the first day of the Bankruptcy Proceedings (Case No. 14-10979 (CSS) (Bankr. D. Del.), ECF Nos. 43, 56, 57, 58) and participated in the negotiation over the Bankruptcy Court's order governing the use of cash collateral during the Bankruptcy Proceedings.  Defendant Wilmington Trust also appeared in the early stages of the case (ECF Nos. 329, 356, 357, 358, 359) and has been an active participant throughout.  Finally, the Intervenor Defendants have been actively involved in all aspects of the Bankruptcy Proceedings through their bankruptcy counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP.

[4] This schedule is similar to the briefing schedule Judge Engelmayer adopted in another TCEH intercreditor dispute pending in this court where similar issues of bankruptcy court jurisdiction and venue transfer were raised. *Delaware Trust Co. v. Wilmington Trust, N.A.*, Case No. 15-cv-02883 (PAE) (S.D.N.Y. 2015) (ECF No. 26).

O'MELVENY & MYERS LLP

Hon. Analisa Torres, June 30, 2015 - Page 5

                              Respectfully Submitted,

                              /s/ Jonathan Rosenberg

                              Jonathan Rosenberg
                              Partner
                              of O'MELVENY & MYERS LLP

JR

cc:      All Counsel of Record