UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARATHON ASSET MANAGEMENT, LP,

                 Plaintiff,

      against

WILMINGTON TRUST, N.A., as
Administrative Agent and Collateral Agent,

                 Defendant,

ANGELO GORDON & CO., LP, APOLLO
ADVISORS VII, L.P., BROOKFIELD ASSET
MANAGEMENT PRIVATE
INSTITUTIONAL CAPITAL ADVISER
(CANADA), L.P.

               Intervenor Defendants.

No. 1:15-CV-04727 (AT)(AJP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### INTERVENOR DEFENDANTS ANGELO GORDON & CO., LP, APOLLO ADVISORS VII, L.P., BROOKFIELD ASSET MANAGEMENT PRIVATE INSTITUTIONAL CAPITAL ADVISER (CANADA), L.P. REPLY IN FURTHER SUPPORT OF THEIR MOTION TO TRANSFER VENUE

         O'MELVENY & MYERS LLP
         7 Times Square
         New York, New York 10036
         Tel. (212) 326-2000
         Fax (212) 326-2061

         *Attorneys for Intervenor Defendants Angelo Gordon & Co., LP, Apollo Advisors VII, L.P., Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 1

    I.       TRANSFER UNDER § 1412 IS PROPER BECAUSE THIS IS A CORE PROCEEDING ....................................................................................... 1

          A.    Resolution of this Dispute Will Affect TCEH's Emergence from Bankruptcy ......................................................................... 2

          B.    This Action Is Intertwined with the Bankruptcy Proceedings ................... 4

    II.     TRANSFER UNDER §§ 1404 AND 1412 IS PROPER BECAUSE IT WOULD BE MORE CONVENIENT TO LITIGATE THIS CASE IN DELAWARE ................................................................................... 5

CONCLUSION ........................................................................................................ 8

APPENDIX OF DEFINED TERMS ....................................................................... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Ben Cooper, Inc.*,
896 F.2d 1394 (2d Cir. 1990).................................................................5

*In re Best Mfg. Grp. LLC*,
2007 WL 2746834 (Bankr. D.N.J. Sept. 17, 2007) ...............................3

*Delaware Trust Co. v. Wilmington Trust, N.A.*,
2015 WL 4503521 (S.D.N.Y. July 23, 2015) ................................. *passim*

*In re Extended Stay Inc.*,
435 B.R. 139, 146 (S.D.N.Y. 2010)........................................................4

*Foothill Capital Corp. v. Kidan*,
2004 WL 434412 (S.D.N.Y. Mar. 8, 2004) ...........................................6

*Industri & Skipsbanken A/S v. Levy*,
183 B.R. 58 (S.D.N.Y. 1995)...................................................................6

*JP Morgan Chase Bank, N.A. v. Coleman-Toll Ltd. P'ship*,
2009 WL 1457158 (S.D.N.Y. May 26, 2009) ........................................6

*In re Liberty State Benefits of Del. Inc.*,
2015 U.S. Dist. LEXIS 30327 (D. Del. Mar. 12, 2015) ........................7

*Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*,
487 B.R. 158 (S.D.N.Y. 2013)................................................................1

*Mt. McKinley Ins. Co. v. Corning Inc.*,
399 F.3d 436 (2d Cir. 2005)....................................................................3

*Nat'l Union Fire Ins. Co. v. Turtur*,
743 F. Supp. 260 (S.D.N.Y. 1990) .........................................................7

*In re Olympia & York Maiden Lane Co. LLC*,
1999 WL 58581 (Bankr. S.D.N.Y. Jan. 25, 1999).................................3

*In re Visteon Corp.*,
2011 U.S. Dist. LEXIS 49302 (D. Del. May 9, 2011)............................8

**TABLE OF AUTHORITIES**
**(Continued)**

**Statutes**                                                                 **Page(s)**

28 U.S.C. § 157 ........................................................................................... 4, 7

28 U.S.C. § 1334 ............................................................................................ 7

28 U.S.C. § 1404 ...................................................................................... 5, 7, 8

28 U.S.C. § 1412 ..................................................................................... *passim*

Fed. R. Bank. P. 5011(c) ................................................................................. 7

## PRELIMINARY STATEMENT[1]

Marathon's opposition rests on the fiction that this proceeding is a standalone contract dispute existing independently of the Bankruptcy Proceedings.  But it is indisputable that a favorable judgment for Marathon would affect how TCEH's bankruptcy estate will distribute its property among various First Lien Creditors.  Under TCEH's plan of reorganization, the First Lien Creditors will receive *pro rata* distributions of equity in a newly reorganized TCEH entity and assume the attendant shareholder rights and responsibilities.  Yet Marathon refuses to acknowledge that the relief it seeks would change how that equity is distributed and, thus, this dispute creates uncertainty in the plan confirmation process and reorganized TCEH's future.  This dispute, therefore, is necessarily intertwined with the Bankruptcy Proceedings and should be resolved by the Delaware Bankruptcy Court responsible for overseeing such disputes in the context of plan confirmation.

## ARGUMENT

## I.    TRANSFER UNDER § 1412 IS PROPER BECAUSE THIS IS A CORE PROCEEDING

As the Intervenor Defendants established (Intervenor Defs. Mem. at 18–21), transfer of this action to the Delaware Bankruptcy Court is proper under 28 U.S.C. § 1412 because it is a core proceeding interconnected with the underlying bankruptcy.  *See Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158, 165 (S.D.N.Y. 2013) ("Transfer of venue for 'core' proceedings is governed by 28 U.S.C. § 1412 . . . .").  Marathon maintains otherwise only

---

[1] Capitalized terms have the definitions ascribed to them in the attached Appendix of Defined Terms.  Unless otherwise noted, this Reply omits all internal quotation marks, citations, and alterations and adds any emphasis reflected in quoted passages.  The documents referred to in this brief other than the Complaint ("Compl."), Plaintiff's Opposition ("Pl. Opp."), Intervenor Defendants' Memorandum ("Intervenor Defs. Mem."), and Declaration of Jonathan Rosenberg ("Rosenberg Decl.") are attached as exhibits to the August 3, 2015 Declaration of Jonathan Rosenberg in support of this Reply ("Rosenberg Reply Decl.").

by ignoring the context surrounding its complaint:  that (i) the outcome of this dispute will affect how equity is distributed in a newly reorganized TCEH entity and (ii) this action was brought *during* the Bankruptcy Proceedings after a plan of reorganization threatening Marathon's alleged rights was put on track for confirmation.  *See Delaware Trust Co. v. Wilmington Trust, N.A.*, 2015 WL 4503521, at *14 (S.D.N.Y. July 23, 2015) (holding that the "legal and factual context [of a dispute between non-debtors over pre-petition contract is] essential to determining whether the claim at issue is 'independent' of the bankruptcy proceedings").

### A.      Resolution of this Dispute Will Affect TCEH's Emergence from Bankruptcy

Marathon ignores that this dispute will directly affect how TCEH equity will be distributed to First Lien Creditors in the Bankruptcy Proceedings.  Under every plan of reorganization TCEH has proposed to date, First Lien Creditors would receive *pro rata* distributions of equity in a reorganized TCEH entity.[2]  *See* Rosenberg Reply Decl. Ex. A at 52; Rosenberg Decl. Ex. E at 46.  This form of consideration holds important implications for TCEH's emergence from bankruptcy.  Equity, unlike cash, carries with it more than just monetary value, *i.e.*, an ownership interest in a corporation.  Thus, unlike cash, which can be held in escrow, uncertainty over who owns stock creates uncertainty over corporate ownership, which could hinder the reorganized TCEH entity's ability to govern itself after emerging from bankruptcy.

Contrary to Marathon's assertion (Pl. Opp. 3, 15), this is not conjecture or speculation. For example, if Marathon were to prevail in this action and there existed an Undrawn Overage

---

[2] TCEH filed its initial plan of reorganization on April 14, 2015.  Rosenberg Decl. Ex. E. That plan has since been amended twice, on July 23, 2015, and on August 3, 2015.  The August plan is attached to the Rosenberg Reply Declaration as Exhibit A.   Due to its size, the Intervenor Defendants have not attached a copy of the July plan as an exhibit, although it is available on request.

Amount in the Deposit L/C Collateral Account, Deposit L/C Lenders would receive more shares in reorganized TCEH than other First Lien Creditors and, thus, would have more influence over selecting directors to the new TCEH entity's board.  Rosenberg Reply Decl. Ex. A at 26. Similarly, different shareholders could easily have different views as to what, if any, strategic opportunities reorganized TCEH should pursue.  Uncertainty over share ownership may impede reorganized TCEH's ability to pursue those initiatives.  Thus, the timing and size of equity distributions to First Lien Creditors, which this dispute will determine, can have significant ramifications for plan confirmation and corporate governance of the newly formed entity.

 For this reason, the cases Marathon cites that found certain adversary proceedings non-core are inapposite.  (*See* Pl. Opp. 11.)  In *Mt. McKinley Ins. Co. v. Corning, Inc.*, *In re Best Mfg. Grp. LLC*, and *In re Olympia & York Maiden Lane Co. LLC*, the outcome of the adversary proceedings would only indirectly affect, if at all, ***cash*** distributions from the debtor.  *See Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447–50 (2d Cir. 2005) (holding non-core an insurance dispute between creditor and non-party to bankruptcy because insurance proceeds would have limited impact on plan distributions); *In re Best Mfg. Grp. LLC*, 2007 WL 2746834, at *4–6 (Bankr. D.N.J. Sept. 17, 2007) (holding non-core dispute affecting distributions of sale proceeds of property that was not part of the bankruptcy estate); *In re Olympia & York Maiden Lane Co. LLC*, 1999 WL 58581, at *4 (Bankr. S.D.N.Y. Jan. 25, 1999) (holding non-core dispute over rent proceeds that were no longer estate property and would not affect debtor's confirmed plan or distributions to other creditors).  A dispute over cash carries with it none of the corporate governance implications carried by a dispute, like this, over the allocation of equity.

 Moreover, in each of those cases, the debtor had either already sold all its assets or its plan of reorganization had already been confirmed.  There was therefore little left for the

bankruptcy court to address.  Here, in contrast, the bankruptcy court has yet to perform one of its core functions of confirming a plan of reorganization because this dispute has been brought *ahead* of plan confirmation and is, in effect, an objection to TCEH's plan.  *See Delaware Trust*, 2015 WL 4503521, at *13 (holding pre-confirmation contract dispute between non-debtors was core because it "set[] the table for a determination regarding plan distributions"); *see also* 28 U.S.C. 157(b)(2)(L) (defining plan confirmation as core matter).

Marathon's calculated choice not to name TCEH as a party to this action changes nothing, just as it didn't in *Delaware Trust*, where TCEH likewise was not named a party and did not intervene.  *Delaware Trust*, 2015 WL 4503521, at *10–15 (finding core dispute between non-debtors where debtor not a party); *see also In re Extended Stay Inc.*, 435 B.R. 139, 146 (S.D.N.Y. 2010) (holding "overwhelmingly" core dispute between non-debtors to which debtor was not a party).  No inference can be drawn from TCEH's non-appearance here.  And contrary to any suggestion that TCEH is indifferent to the timing of this dispute's resolution or its impact on plan confirmation, TCEH provided for *pro rata* distribution in its proposed plan of reorganization, which shows that certainty regarding share allocation among reorganized TCEH's new owners is integral to reorganization.  More importantly, Judge Sontchi will be best positioned to sort that out as he navigates through many plan of reorganization issues.  *See Delaware Trust*, 2015 WL 4503521, at *16 (noting that Judge Sontchi "is intimately familiar with the facts, issues, and entities of the bankruptcy" and can promptly adjudicate the dispute).

### B.    This Action Is Intertwined with the Bankruptcy Proceedings

Moreover, it does not matter that Marathon theoretically could have commenced this action before TCEH's bankruptcy filing or could have delayed suing until after the Bankruptcy Proceedings concluded.  (*See* Pl. Opp. 15–16.)  The timing of this litigation is hardly a "coincidence":  Marathon filed it as a response to a TCEH proposed plan of reorganization that

did not recognize the Deposit L/C Lenders' alleged priority rights.  As Marathon admits in its

own pleading initiating this action, Marathon filed suit when it did—a month *after* TCEH filed

its first proposed plan of reorganization—because it was "concerned that as the bankruptcy

proceedings of TCEH run their course, the time will soon come for Wilmington [Trust] to

allocate and distribute value" to First Lien Creditors.  (Compl. ¶ 47.)  In contrast, at no point

during the nearly seven years between the Credit Agreement's and Intercreditor Agreement's

execution and TCEH's bankruptcy filing did Marathon seek to enforce its alleged priority rights.

As Judge Engelmayer stated in *Delaware Trust*, it is "telling[ that] the parties had been

signatories to the Intercreditor Agreement since 2007, but no such dispute emerged *until* TCEH's

bankruptcy filing."  2015 WL 4503521, at *11 (emphasis in original) (citing *In re Ben Cooper,

Inc.*, 896 F.2d 1394, 1400 (2d Cir. 1990) ("We hold that the timing of a dispute may render it

uniquely a bankruptcy case.")).

## II.     TRANSFER UNDER §§ 1404 AND 1412 IS PROPER BECAUSE IT WOULD BE MORE CONVENIENT TO LITIGATE THIS CASE IN DELAWARE

As Intervenor Defendants have shown (Intervenor Defs. Mem. at 20–21), transfer of this

action is proper under 28 U.S.C. §§ 1404 and 1412 because it would be more convenient for the

parties to litigate this dispute in conjunction with the pending Bankruptcy Proceedings.

Marathon does not dispute that the parties here are already involved in the Bankruptcy

Proceedings and are set up to litigate this very dispute during confirmation.  As in *Delaware

Trust*, transfer would give the parties a "single court to resolve their various disputes" that is

already familiar with the parties, their agreements, and the facts and circumstances surrounding

this action.  2015 WL 4503521, at *16–17.  And because any plan of reorganization will

necessarily involve determining the relative rights of the First Lien Creditors, this dispute will

likely come up during confirmation litigation.  Marathon correctly points out that it has not yet

objected to confirmation (Pl. Opp. 3), but neglects to mention that (i) confirmation objections are not due until December if the plan is contested and (ii) a deadline has not been set for objections to a consensual plan. *See* Rosenberg Decl. Ex. F, Stipulation and Agreed Order Exhibit A, ¶¶ 8(p), 9. Marathon tellingly does not state that it would *not* object to a plan providing, as the current plan does, for *pro rata* allocation. Indeed, given that the plan on file requires TCEH to distribute equity to First Lien Creditors *pro rata* as opposed to in the manner Marathon prefers, Marathon has virtually no choice but to object to the plan.

Marathon resists transfer based on a permissive, non-exclusive forum selection clause and a threat to seek withdrawal of the reference from the bankruptcy court. (Pl. Opp. 20–22.) But neither justifies denying venue transfer.

*First*, the Intercreditor Agreement's permissive, non-exclusive forum selection clause (*see* Pl. Opp. 21–22) does not preclude transfer. The Intervenor Defendants have not claimed surprise at being hauled into court in New York or that litigating in New York would be theoretically impossible. Rather, litigating *this* dispute in the Delaware Bankruptcy Court *at this time* would be *more* convenient for the reasons articulated here and in the Intervenor Defendants' Memorandum. The forum selection clause is but one of several factors to be considered in the venue transfer analysis. *See Delaware Trust*, 2015 WL 4503521, at *15 n.5 (listing factors weighed in transfer determination). As Judge Engelmayer noted, "actions have frequently been transferred to jurisdictions where bankruptcy proceedings have been pending notwithstanding forum selection clauses." *Id.* at *17 (transferring action to district where bankruptcy was pending notwithstanding permissive forum selection clause); *see also JP Morgan Chase Bank, N.A. v. Coleman-Toll Ltd. P'ship*, 2009 WL 1457158, at *6 (S.D.N.Y. May 26, 2009) (same); *Foothill Capital Corp. v. Kidan*, 2004 WL 434412, at *4–5 (S.D.N.Y. Mar. 8, 2004) (same); *Industri &*

*Skipsbanken A/S v. Levy*, 183 B.R. 58, 64 (S.D.N.Y. 1995) (same); *Nat'l Union Fire Ins. Co. v. Turtur*, 743 F. Supp. 260, 263 (S.D.N.Y. 1990) (same).  Here, the other factors at play, including the efficiencies to be gained by litigating this dispute as part of plan confirmation and the close connection between this core proceeding and the Bankruptcy Proceedings, simply outweigh the relevance of a non-exclusive forum selection clause.  Even assuming, as Marathon suggests, that this dispute were fast-tracked under the Uniform Rules for the Supreme Court and County Courts of New York, the pace of that litigation could not compete with the already scheduled confirmation trial dates in the Bankruptcy Proceedings.

*Second*, the possibility that Marathon may seek to withdraw reference of this matter to the Delaware Bankruptcy Court under 28 U.S.C. § 157(d) is not a sufficient basis for denying venue transfer.  If this Court were to determine that it has federal jurisdiction over this matter under 28 U.S.C. § 1334 and transfer this action to the Delaware District Court under 28 U.S.C. §§ 1404 and 1412, this action would automatically be referred to the Delaware Bankruptcy Court under the Delaware District Court's standing order of reference.  *See* Amended Standing Order of Reference (D. Del. Feb. 29, 2012).  At that point, the matter would continue in the bankruptcy court pending the district court's determination on any motion Marathon might make, absent obtaining a stay from Judge Sontchi.  Fed. R. Bank. P. 5011(c).  And Marathon would be hard-pressed to prevail in any hypothetical withdrawal motion it might file.  Mandatory withdrawal under 28 U.S.C. § 157(d) would be unavailable because, as Marathon concedes in seeking remand (Pl. Opp. 19), this dispute does not involve the substantial and material consideration of federal law.  *See In re Liberty State Benefits of Del. Inc.*, 2015 U.S. Dist. LEXIS 30327, at *4–5 (D. Del. Mar. 12, 2015) (holding mandatory withdrawal applies only when dispute requires consideration of substantial and material federal law outside the Bankruptcy Code).  And

permissive withdrawal would be unlikely because of the many factors that weigh against it (*e.g.*, core dispute, no possibility of jury demand, dispute concerns largely legal issues subject to *de novo* review).  *See In re Visteon Corp.*, 2011 U.S. Dist. LEXIS 49302, at *7 (D. Del. May 9, 2011) (listing factors relevant to permissive withdrawal determination).

## CONCLUSION

Marathon's position that this adversary proceeding exists in a vacuum, entirely separate and independent from the Bankruptcy Proceedings, has no connection to reality.  The indisputable context to this dispute is that a determination of creditor rights here will necessarily affect how and when equity distributions will be made under TCEH's plan of reorganization. Because this is a core proceeding and consolidating this case in the same forum as the Bankruptcy Proceedings would serve the parties' convenience, the Delaware Bankruptcy Court is the proper venue for this dispute.

For these reasons and the reasons set forth in the Intervenor Defendants' Memorandum, the Intervenor Defendants respectfully request that this Court transfer this action to the United States District Court for the District of Delaware pursuant to 28 U.S.C. §§ 1404 and/or 1412.

[*Signature on following page*]

Dated:  New York, New York

       August 3, 2015

Respectfully submitted,

O'MELVENY & MYERS LLP

By:  /s/ Jonathan Rosenberg

Jonathan Rosenberg
George A. Davis
Daniel S. Shamah
7 Times Square
New York, New York 10036
jrosenberg@omm.com
gdavis@omm.com
dshamah@omm.com
Tel:  (212) 326-2000
Fax: (212) 326-2061

Peter Friedman (*pro hac vice*)
1625 Eye Street, NW
Washington, DC 20006
pfriedman@omm.com
Tel:  (202) 383-5300
Fax: (202) 383-5414

*Attorneys for Intervenor Defendants Angelo Gordon & Co., LP, Apollo Advisors VII, L.P., Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P.*

## APPENDIX OF DEFINED TERMS

| Defined Term | Definition |
|---|---|
| Bankruptcy Proceedings | The pending bankruptcy cases of TCEH, its parent Energy Future Holdings Corp., and certain TCEH subsidiaries in Delaware Bankruptcy Court.  The Bankruptcy Proceedings are jointly administered under Energy Future Holdings Corp.'s bankruptcy proceeding, Case No. 14-10979 (Bankr. D. Del.) |
| Complaint | Marathon's complaint filed on May 14, 2015 in the Supreme Court of the State of New York, County of New York |
| Credit Agreement | The credit agreement entered into on October 10, 2007 among TCEH, TCEH's immediate parent Energy Future Holdings Corp., the administrative and collateral agents for the First Lien Debt, the Deposit Letter of Credit Issuer, and certain other lenders |
| Declaration of Jonathan Rosenberg | The Declaration of Jonathan Rosenberg, Esq. in Opposition to Marathon's Motion to Remand and for Abstention and in Support of Intervenor Defendants's Motion to Transfer Venue, filed July 17, 2015 [Dkt. 27] |
| Deposit L/C Collateral Account | A segregated account established by TCEH as security for the approximately $1.25 billion of Deposit L/C Loans |
| Deposit L/C Lenders | Holders of First Lien Deposit L/C Loans |
| Deposit L/C Loans | Loans by lenders who committed to deposit funds to collateralize TCEH's obligation to the Deposit Letter of Credit Issuer |
| Deposit Letter of Credit | Letter of credit issued to TCEH and certain of its subsidiaries for the direct or indirect benefit of TCEH's parent and its other subsidiaries |
| Deposit Letter of Credit Issuer | Citibank, N.A., as an issuer of Deposit Letters of Credit, and each other issuer of a Deposit Letter of Credit |
| First Lien Creditors | Holders of First Lien Debt |

| Defined Term | Definition |
|---|---|
| First Lien Debt | Collectively, (i) $20.55 billion in term loans; (ii) a $2.7 billion revolving line of credit; and (iii) $1.25 billion of Deposit L/C Loans |
| First Lien Deposit L/C Loans | The approximately $1.25 billion of Deposit L/C Loans |
| Intercreditor Agreement | The Amended and Restated Collateral Agency and Intercreditor Agreement dated as of October 10, 2007, as amended and restated as of August 7, 2009 |
| Intervenor Defendants' Memorandum | The Memorandum of Law of Intervenor Defendants in Opposition to Plaintiff's Motion to Remand and for Abstention and in Support of Their Motion to Transfer Venue, filed July 17, 2015 [Dkt. 26] |
| Plaintiff's Opposition | Marathon's Memorandum of Law in Further Support of Motion to Remand and for Abstention and in Opposition to Motion to Transfer Venue, filed July 29, 2015 [Dkt. 30] |
| Undrawn Overage Amount | The difference between the issued Deposit Letters of Credit principal amount outstanding and the actual amount TCEH owes the beneficiaries of the Deposit Letter of Credit |